**386**

James **BENJAMIN**, Miguel Galindez, Bruce Hayes, Jose Saldana and Robert Eschert, Detainees of the New York City House of Detention for Men, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Benjamin J. **MALCOLM**, Commissioner of Correction of the City of New York, Arthur Rubin, Warden, New York City House of Detention for Men, Gerard Brown, Deputy Warden, New York City House of Detention for Men; and Abraham D. Beame, Mayor of the City of New York, Individually and in their official capacities, Defendants.

No. 75 Civ. 3073(MEL).

United States District Court,
S. D. New York.

May 28, 1981.

The Legal Aid Soc., Prisoners' Rights Project, New York City, for plaintiffs; Theodore H. Katz, New York City, of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants; Leonard Koerner and Paul T. Rephen, Asst. Corp. Counsel, New York City, of counsel.

Rowley & Forrest, P. C., Albany, N. Y., for intervenors; Brian J. O'Donnell and Mark T. Walsh, Jr., Albany, of counsel.

LASKER, District Judge.

Under New York law[1] the New York State Department of Correctional Services is obligated to house persons convicted of felonies and sentenced to a period of incarceration of more than one year in State correctional facilities.

Persons falling into this category who have been tried within the City of New York are held pending transfer to a State institute at the House of Detention for Men (HDM), Rikers Island, operated by New York City. In August, 1980 the number of such "State readies" being housed at HDM was so large that it interfered with the City's obligation to maintain mandated[2] maximum population levels. As a result, the City defendants in this litigation moved under Rule 19 of the Federal Rules of Civil Procedure to join the Governor of the State of New York and the State Commissioner of Correctional Services as defendants in this action so that they could be ordered substantially to reduce the number of "State readies" at HDM thereby permitting the City to comply with the population limiting mandates set for HDM.

In response to that motion the Governor and State Commissioner represented to the court that they would use their best efforts to assure that on any given day the number

1. Criminal Procedure Law §§ 430.20 and 430.-30.

2. The City is under mandate both from this court in accordance with the decision of Au-

gust 27, 1980, (*Benjamin v. Malcolm*, 495 F.Supp. 1357 (S.D.N.Y.1980)) and the standards set by the Board of Corrections of New York City.

of State readies at HDM housed for more than 65 days did not exceed 100. The Governor and the Commissioner have kept their commitments.

### I.

New York State Inspection, Security and Law Enforcement Employees, District Council 82, American Federation of State, County and Municipal Employees, AFL–CIO (Council 82) is the employee organization representing the State employees who work at State correctional facilities. Council 82 and a number of its officers presently move under Federal Rule of Civil Procedure 24 for an order 1) permitting them, on behalf of correction officers, sergeants and lieutenants at State facilities, to intervene in this action, 2) certifying such correction personnel as a class under Federal Rule of Civil Procedure 23 and 3) joining the Governor and Commissioner of Correction of New York as defendants under Federal Rules of Civil Procedure 19 and 21. The movants contend that as a result of the State officials taking State readies into State custody more quickly than was previously the case, the *State* prisons are now dangerously overcrowded with an imminent risk of injury to inmates and correctional personnel. The allegations made in their proposed answer and cross-claim, supported by submitted statistical material and supplemented by the State's admission that population at State prisons is now at 100 to 105% of capacity, are serious and cannot be ignored. In particular, the movants allege that

"39. Defendants Carey and Coughlin have a duty to provide sufficient secure inmate housing facilities and security personnel to maintain a safe work place for Intervenors, or in the alternative to maintain inmate population levels within the safe operating capacity of the existing DOCS facilities and security personnel levels.

"40. Intervenors and all members of the intervenor class have a direct and vital interest in the maintenance of safe and humane living conditions for the inmates within the custody or control of DOCS. The deterioration of those conditions inevitably leads to increased inmate violence and hostility which can culminate in disorders or riots such as the 1971 Attica riot which resulted in the death or injury of both correction officers and inmates.

"41. Inmates are presently housed in condemned areas of the correctional facilities at DOCS.

"42. Incidents by inmates including inmate altercations, assaults on staff, assaults on other inmates, the introduction of dangerous contraband into institutions, destruction of property by inmates, and the setting of fires by inmates have increased as a result of the overcrowding and inadequate staffing.

"43. The rise in the number of such incidents subjects Intervenors and all members of the intervenor class to a great and ever-increasing risk of irreparable harm resulting from assault by inmates on correction officers, correction sergeants and correction lieutenants, or from injuries sustained by correction officers, correction sergeants and correction lieutenants in attempting to prevent violent and destructive actions by inmates.

"44. Intervenors will be subjected to the same type of increased dangers and irreparable harm as a result of inmate assaults and other incidents of inmate violence if Governor Hugh L. Carey and Commissioner Thomas A. Coughlin, III, and DOCS are not compelled to provide adequate housing facilities for the number of inmates incarcerated in the correctional facilities operated by DOCS."

No court which, like this one, has been exposed over a period of years to the grave consequences of prison overcrowding can fail to take seriously the issue raised by Council 82's motion to intervene.

Nevertheless, the motion must be denied. Under Rule 24 of the Federal Rules of Civil Procedure, intervention may be allowed as a matter of right only

"when the applicant claims an interest relating to the property or transaction which is the subject of the action and . . .

is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

The movants fail to qualify under this rule because their interest does not relate to the subject of this action, which is exclusively concerned with conditions of confinement at New York City's House of Detention for Men. To the contrary, the movants request for relief is directed solely to changing conditions at *State* operated correctional facilities. Moreover, the disposition of this action would not "as a practical matter impair or impede [Council 82's] ability to protect" its interest since Council 82 is free to appropriately secure relief, if warranted, in a separate action relating to conditions at State prisons. What it seeks to do here by its motion to intervene is to commence a new cause of action within the present substantially terminated litigation. Rule 24 was not intended as a vehicle for that purpose.

Under the second branch of Rule 24 (i. e. 24(b)) the court may, in its discretion, allow intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." However, as indicated above the movants' claim here does not have questions of law or fact in common with those heretofore litigated in this action. Moreover, there is a serious question whether, if the movants crossclaim were filed as a complaint, it would state a federal claim. Without ruling on the novel question whether the civil rights of correctional guards under 42 U.S.C. § 1983 are violated by overcrowding in the prisons in which they are employed, the proposition is sufficiently tenuous to influence a federal court against exercising its discretion to allow intervention on such a claim. There is nothing, however, which would prevent Council 82 and its members from seeking relief in a State court whose general jurisdiction would present no such problems. Indeed, a State court would have wider scope to grant relief, if warranted, since its authority would emanate not only from the United States Constitution

(to which a federal court's power to grant relief is limited under 42 U.S.C. § 1983) but the New York State Constitution, statutes and other applicable law as well.

## II.

The unusual nature of Council 82's action in seeking to reduce prison overcrowding in State facilities by intervening in litigation relating to City facilities may well be evidence of the desperation with which correction officers observe public indifference to the problems of overcrowded prisons. Yet in the particular instance at hand, relief is not to be found in a motion to intervene but, if it is properly to be granted, by suit in the State courts or by determined action on the part of the executive and legislative authorities of the State of New York.

The motion is denied.

It is so ordered.